# United States Court of Appeals

### *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

RICHARD TODD HAAS,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

# AMENDED OPENING BRIEF OF APPELLANT

WILLIAM J. DINKIN
STONE, CARDWELL &
DINKIN, PLLC
101 Shockoe Slip, Suite K
Richmond, VA 23219
(804) 359-0000
bill.dinkin@gmail.com

*Counsel for Appellant*

 COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF JURISDICTION .............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE .................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................. 15

STANDARD OF REVIEW ....................................................................... 17

ARGUMENT ....................................................................................... 19

   I.    The search was unreasonable because the agent applying for the search warrant recklessly omitted information necessary to determine probable cause ........... 19

       A.   The district court applied the wrong standard to the first step of the *Franks* analysis and therefore erroneously denied Mr. Haas the opportunity to conduct a *Franks* hearing. .................. 22

          1.   Mr. Haas made a showing that clearly described the nature of Agent Gonzalez' omissions ............................................................ 24

          2.   The District Court received enough evidence of Agent Gonzalez' reckless disregard for the truth to warrant a *Franks* hearing ...................................... 26

       B.   The District Court erroneously denied Haas' *Franks* motion to suppress the evidence ..................... 32

          1.   The District Court received enough evidence of Agent Gonzalez' reckless disregard for the truth to warrant suppression pursuant to *Franks* .......................... 33

i

        2.     The affidavit had very little corroborative evidence of CW's allegations ................................ 35

II.    The District Court erroneously applied the good faith exception ..................................................................... 38

III.   The trial court erred by allowing the charge of attempted sex trafficking to be presented to the jury where the evidence was insufficient as a matter of law to show that the Appellant made the requisite substantial step in furtherance of the attempted crime ...................................................................... 41

IV.   The District Court committed procedural error in arriving at Mr. Haas' sentence .............................. 46

      A.    The District Court erroneously applied a four-level enhancement under USSG § 2G2.1(b)(1)(A) where the subject children were fictional .................................................... 46

      B.    The District Court erroneously applied a five-level sentencing enhancement under USSG § 4B1.5(b) by concluding that the instant offense of conviction was a covered sex crime ............. 51

CONCLUSION ......................................................... 53

REQUEST FOR ORAL ARGUMENT ...................................... 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*BeVier* v. *Hucal*,
806 F.2d 123 (7th Cir. 1986) ........................................................ 29

*Brown* v. *Illinois*,
422 U.S. 590 (1975) ..................................................................... 40

*Chapman* v. *United States*,
500 U.S. 453 (1991) ..................................................................... 53

*Clipper* v. *Takoma Park, Md.*,
876 F.2d 17 (4th Cir. 1989) ......................................................... 29

*Daniczek* v. *Spencer*,
156 F. Supp. 3d 739 (E.D. Va. 2016) .......................................... 26

*Evans* v. *Chalmers*,
703 F.3d 636 (4th Cir. 2012) ...................................................... 29

*Franks* v. *Delaware*,
438 U.S. 153 (1978) ........................................................... *passim*

*Gall* v. *United States*,
552 U.S. 38 (2007) ....................................................................... 18

*Herring* v. *United States*,
555 U.S. 135 (2009) ..................................................................... 40

*Horton* v. *City of Columbia*,
408 S.C. 27 (Ct. App. 2014) ......................................................... 31

*Illinois* v. *Gates*,
462 U.S. 213 (1983) ..................................................................... 36

*Ladner* v. *United States*,
358 U.S. 169 (1958) ..................................................................... 53

*Lo-Ji Sales, Inc.* v. *New York*,
442 U.S. 319 (1979) ..................................................................... 40

*Miller* v. *Prince George's Cnty*,
475 F.3d 621 (4th Cir. 2007) ................................................ 26, 30

*People of the Virgin Islands* v. *John*,
    654 F.3d 412 (3d Cir. 2011) ........................................... 37

*Reno* v. *Koray*,
    515 U.S. 50 (1995) ............................................................ 53

*Smith* v. *Reddy*,
    882 F. Supp. 497 (D. Md. 1995) ........................................ 28-29, 33

*Smith* v. *United States*,
    508 U.S. 223 (1993) .......................................................... 53

*Tenn. Valley Auth.* v. *Hill*,
    437 U.S. 153 (1978) .......................................................... 50

*Torchinsky* v. *Siwinski*,
    942 F.2d 257 (4th Cir. 1991) .......................................... 29

*United States* v. *Childress*,
    104 F.3d 47 (4th Cir. 1996) ............................................. 50

*United States* v. *Colkley*,
    899 F.2d 297 (4th Cir. 1990) .............................. 21, 23, 31

*United States* v. *Cutler*,
    36 F.3d 406 (4th Cir. 1994) ............................................. 53

*United States* v. *Dowell*,
    771 F.3d 162 (4th Cir. 2014) .......................................... 52

*United States* v. *Doyle*,
    650 F.3d 460 (4th Cir.) .................................................... 37

*United States* v. *Falso*,
    544 F.3d 110 (2d Cir. 2008) ............................................ 38

*United States* v. *Fulford*,
    662 F.3d 1174 (11th Cir. 2011) ...................................... 49

*United States* v. *Glover*,
    755 F.3d 811 (7th Cir. 2014) .......................................... 31

*United States* v. *Haas*,
    2017 U.S. Dist. LEXIS 67178 (E.D. Va. May 2, 2017) ........... *passim*

*United States* v. *Hargrove,*
    701 F.3d 156 (4th Cir. 2012) ...................................................... 19

*United States* v. *Hodson,*
    543 F.3d 286 (6th Cir. 2008) ...................................................... 38

*United States* v. *Leon,*
    468 U.S. 897 (1984) ............................................ 1, 15, 39, 40

*United States* v. *Lull,*
    824 F.3d 109 (4th Cir. 2016) .................................... *passim*

*United States* v. *McNeal,*
    818 F.3d 141 (4th Cir. 2016) ................................... 18, 42

*United States* v. *Pratt,*
    351 F.3d 131 (4th Cir. 2003) ............................ 41, 42, 44

*United States* v. *Santos,*
    553 U.S. 507 (2008) ...................................................... 53

*United States* v. *Shorter,*
    328 F.3d 167 (4th Cir. 2003) ................................... 31, 34

*United States* v. *Stevenson,*
    396 F.3d 538 (4th Cir. 2005) ...................................................... 18

*United States* v. *Strieper,*
    666 F.3d 288 (4th Cir. 2012) ...................................................... 19

*United States* v. *Tate,*
    524 F.3d 449 (4th Cir. 2008) ............................ 24, 37, 38

*United States* v. *Vasquez,*
    839 F.3d 409 (5th Cir. 2016) ...................................................... 49

*United States* v. *Wharton,*
    840 F.3d 163 (4th Cir. 2016) .................................... *passim*

*United States* v. *Wolf,*
    860 F.3d 175 (4th Cir. 2017) ................................... 18, 41

**Statutes & Other Authorities:**

18 U.S.C. § 1591....................................................................... 41

18 U.S.C. § 1594....................................................................... 51

18 U.S.C. § 2251......................................................................... 4

18 U.S.C. § 2252A(a)(2) ............................................................ 3

18 U.S.C. § 2252A(a)(2)(A) ..................................................... 52

18 U.S.C. § 2252A(a)(5)(B) ..................................................... 52

18 U.S.C. § 3231......................................................................... 1

18 U.S.C. § 3742(a) .................................................................... 1

28 U.S.C. § 1291......................................................................... 1

42 U.S.C. § 1983................................................................ 29, 30

Fed. R. Evid. 609(a) ................................................................. 27

USSG § 2G1.3(b)(5) .................................................................. 49

USSG § 2G2.1 ..................................................................... 47, 49

USSG § 2G2.1(b)(1) .................................................................. 17

USSG § 2G2.1(b)(1)(A) ....................................................... 46, 51

USSG § 2G2.1(b)(1)(B) ....................................................... 46, 51

USSG § 2G2.2 ........................................................................... 49

USSG § 4B1.5 ............................................................................ 52

USSG § 4B1.5(b) ........................................................... 17, 51, 52

Model Penal Code § 5.01(2) ..................................................... 43

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. This appeal is from a final judgment of the District Court entered January 24, 2019 and a Notice of Appeal was filed on January 31, 2019. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

**I. Did the District Court apply the wrong standard in evaluating and denying Mr. Haas' motion for a *Franks* hearing?**

**II. Did the District Court err in concluding that the FBI Special Agent did not act recklessly by omitting material information from his affidavit for a search warrant that undermined the credibility of his informant?**

**III. Did the District Court err in applying the *Leon* good faith exception to allow the introduction of evidence found pursuant to a search warrant that lacked probable cause?**

**IV. Did the District Court err by denying the Appellant's Motion for Judgment of Acquittal on Count One, Attempted Sex Trafficking, where there was insufficient evidence that the**

Appellant ever took a substantial step in furtherance of the alleged attempted crime?

**IV. Did the District Court commit procedural error at sentencing by misapplying two separate sentencing enhancements when calculating the Sentencing Guidelines?**

## STATEMENT OF THE CASE

On September 26, 2018, a jury found Richard Haas ("Haas") guilty of attempted sex trafficking of children, (Count 1), receipt of child pornography, (Count 2), and two counts of being in possession of child pornography (Counts 3 and 4). Joint Appendix ("J.A."), at 1066. On January 24, 2019, the District Court entered a sentence of life on Count 1, a term of 240 months on Count 2, a term of 120 months on Count 3, and a term 120 months on Count 4, all to be served concurrently. J.A. at 1067. A notice of appeal was filed on January 31, 2019. J.A. 1072.

Prior to trial, Mr. Haas filed a motion to suppress certain evidence in the case, arguing that a warrant for the search of Mr. Haas' work truck lacked probable cause. J.A. 23. He also moved for a hearing pursuant to *Franks* v. *Delaware*, to present evidence that FBI Special Agent Melvin Gonzalez ("Gonzalez") made material omissions with reckless disregard

for the truth when he submitted his affidavit in support of the application for the search warrant. J.A. 23. The District Court denied Mr. Haas' motion for a *Franks* hearing, J.A. 115-16, but conducted a hearing on the probable cause determination. J.A. 117 – 256.

The District Court subsequently issued a memorandum opinion denying Mr. Haas' motion for a *Franks* hearing as well as his motion to suppress the evidence. J.A. 445, *published at United States* v. *Haas*, 2017 U.S. Dist. LEXIS 67178 (E.D. Va. May 2, 2017). In this opinion, the District Court set forth its rationale for denying the request for a *Franks* hearing, J.A. 461-66, found that the warrant lacked probable cause for the laptop seized in Mr. Haas' work vehicle, J.A. 470-71, but then applied the good-faith exception and did not order the evidence to be suppressed. J.A. 472.

In reaching its decision, the District Court found that on August 31, 2016, Agent Gonzalez of the FBI Richmond Child Exploitation Task Force submitted an Application for a Search and Seizure Warrant for Mr. Haas' 1995 Ford tractor trailer truck and a Samsung Galaxy S5 cell phone related to the suspected violation of 18 U.S.C. § 2252A(a)(2), Possession, Receipt and Distribution of Child Pornography and 18 U.S.C.

§ 2251, Production of child pornography. J.A. 445–47. In support of the application, the trial court found that Gonzalez presented an affidavit averring that "[o]n June 16, 2016, members of the FBI Richmond Child Exploitation Task Force, received information that Haas was both interested in and actively producing child pornography." J.A. 55, 447. A confidential witness ("CW") provided this information. *Id.* She was known to be a prostitute and engaged in commercial sexual activity with Haas for a period of four years. *Id.* CW told the FBI that, "Haas advised CW that he had a neighbor who was approximately 12 years old that would come over and perform oral sex on him." *Id.* CW reported that she and Haas stopped seeing each other shortly after that conversation. CW relayed that, in May 2016, she and Haas resumed their relationship and met at a residence in Chesterfield County, Virginia. J.A. 55, 447–48.

During this visit, Haas brought up his interest in juvenile females. *Id.* at 448. Haas displayed his laptop to CW, which contained images of juvenile females. *Id.* CW described the images as depicting juvenile females between the ages of 5 and 12 in various stages of undress and engaged in sexually explicit acts. *Id.* CW advised that she was shown between 50 and 100 images of these girls. *Id.* Haas advised CW that he

knew the victims because they lived in the neighborhood. *Id*. Haas then told CW that he would like her to be "involved in the production of images and videos of child pornography with juvenile females and inquired as to whether CW would be able to help provide these females for such production." *Id*. CW identified Haas in a photograph provided by FBI agents and she also provided the agents with Haas' phone number. *Id*. FBI agents cross searched the phone number provided by CW with law-enforcement databases and determined that it was the contact number used for Haas in prior law-enforcement investigations. *Id*. CW told the agents that Haas drove a light-colored Jetta and was able to identify a photo of Haas' residence. *Id*.

In a meeting on July 21, 2016, CW told FBI agents that she had numerous telephone conversations with Haas. J.A. 56, 448–49. CW told the agents that Haas "constantly discussed the production of child pornography with CW and requested CW to find an underage female in order to produce child pornography." *Id*. On August 12, 2016 and August 13, 2016, CW recorded two telephone conversations with Haas. *Id*. CW relayed that, "Haas requested CW to coordinate a meeting between him

and an underage female not older than 12 years old." "Haas also requested nude photos of underage females in exchange for money." *Id.*

On August, 18, 2016, FBI agents received a complaint from the Richmond Police Department indicating that Haas sexually molested an 11-year old female ("CV1") on multiple occasions. *Id.* CV1 was forensically interviewed and provided the following information: CV1 and her father would go to the Richmond Inn to beg for money. Haas approached CV1's father and gave him five dollars. J.A. 57, 449. Haas eventually asked if CV1 could provide cleaning services and CV1's father agreed. *Id.*

The affidavit provided that, "[d]uring the initial visit to [Haas'] house . . . .[a]t some point, [Haas] asked CV1 to come to the living room where he was sitting on the floor in front of the couch. [Haas] asked CV1 to lie down on the couch . . . . CV1 said that [Haas] pulled her pants down and pushed her shirt up. CV1 sat up and pulled her pants up and attempted to exit the room. [Haas] stopped her and told her to lie back down on the couch." J.A. 58, 449–50.

According to CV1, this occurred on at least five separation occasions. *Id.* CV1's guardian reported that the last time CVI saw Haas,

sometime in late June 2016, Haas picked CV1 up at her brother's residence and sexually abused CV1 in his vehicle. *Id*. CV1 was unable to identify Haas from a photograph shown to her by law enforcement. *Id*. CV1's guardian obtained Haas' cell phone number from CV1's mother. *Id*. FBI agents confirmed that the number was registered to Haas and it was used for sixty text messages and 100 telephone calls to CV1's mother from May to July of 2016. *Id*. at 451. After receiving the information about CV1, the FBI conducted surveillance on Haas' residence in Chesterfield, Virginia and observed Haas depart the residence in his Jetta. *Id*.

The FBI obtained a search warrant for Haas' residence on August 31, 2016. *Id*. When the FBI attempted to execute the warrant on September 1, 2016, Haas had left for work. *Id*. FBI agents proceeded to Haas' work location and arrested him in his work vehicle, a 1995 Ford tractor-trailer truck. *Id*. Haas was arrested pursuant to a Virginia arrest warrant charging him with aggravated sexual battery of a minor. *Id*. During the search incident to the arrest and a protective sweep, FBI agents recovered a Samsung Galaxy S5 telephone and a laptop bag. *Id*.

"After seeing the laptop bag, the agent ceased his protective sweep and exited the vehicle." *Id*. A second affidavit, identical to the first, was

submitted in support of a request for a warrant to search Haas' 1995 Ford tractor-trailer. J.A. 451. Based on the affidavit, a search warrant was issued and allowed the search of Haas' 1995 tractor-trailer and his cell phone. J.A. 452. A laptop was seized from the tractor-trailer and a forensic examination revealed that Haas saved approximately 17,000 images of children, including prepubescent children, engaged in sexually explicit conduct. *Id.*

Agent Gonzalez testified at the evidentiary hearing on Mr. Haas' Motion to Suppress that he did not personally know CW before the case, but he knew she had served as a confidential witness for the FBI in the Norfolk Division. *Id.* After CW reported that she had seen Mr. Haas viewing child pornography on his computer in May 2016, Gonzalez corroborated Mr. Haas' identity, address, and date of birth. J.A. 452–53. Gonzalez also obtained Mr. Haas' telephone records that "indicated hundreds of calls between them [Haas and CW] and text messages." J.A. 453.

When Gonzalez swore out the affidavit, he was aware that CW was on felony probation supervision in the Virginia court system. *Id.* CW also told Gonzalez that she previously had been arrested for prostitution and

Gonzalez assumed CW was on probation for these offenses as well. *Id*. Gonzalez testified that CW told him on July 14, 2016 that she had an encounter with the Henrico County Police one week earlier and she made false statements to the Henrico police about her identify during the traffic stop. *Id*. She admitted that she provided false information and signed the traffic summons with another identity. *Id*.

CW told Gonzalez she wanted assistance in setting the matter straight with Henrico. *Id*. Gonzalez contacted the Henrico Police Department and the Commonwealth Attorney's Office agreed to set up a meeting with CW. *Id*. Gonzalez escorted CW to the Henrico Court on July 25, 2016, where she was charged and arrested for multiple felonies related to her presenting false information to law enforcement. J.A. 453. She was held in jail without bond. *Id*. Gonzalez testified that none of this information regarding CW's criminal history, other than that she was a prostitute, was included in the affidavit. *Id*. Her history of having been a witness for the FBI was also not included. Gonzalez testified that before swearing to the affidavit, he did not run a criminal history check of CW. *Id*.

Gonzalez testified that CW reported that Haas viewed the child pornography on his black laptop at home. J.A. 454. Gonzalez did not include the color of the laptop in the affidavit. *Id*. Gonzalez explained that CW did not provide any specific identifying marks respecting the laptop. *Id*. Gonzalez also testified that, upon executing the first warrant at Haas' residence, the FBI located two laptops. *Id*. When asked whether he knew, at the time he was filling out the application for the second warrant whether the two laptops had been seized, Gonzalez testified "Probably, yes. Yes. I would say yes." *Id*. Gonzalez explained that the information about the seized laptops was not included in the affidavit for the second warrant. *Id*. When the District Court inquired into the connection between CW's testimony about Haas viewing child pornography on his laptop in his home and Haas' laptop that was found in his work truck, the Government relied on paragraph 36A of the affidavit for the first time. J.A. 454-55. The relevant part states:

> *Probable Cause.* I submit that if a computer or storage medium is found in the SUBJECT PROPERTY, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons: (a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium . . . .

*Id.*

The Government explained "this specific paragraph . . . discusses essentially how long electronic files can be stored, and that deleted files can be recovered by way of forensic techniques." *Id*. Furthermore, paragraph 28 of the affidavit provided how "[c]omputers and digital technology have dramatically changed the way in which individuals interested in child pornography" view it. *Id*. The Government argued this went to "the probable cause to search essentially any laptop [] found in Mr. Haas' possession." *Id*.

After issuing its first Memorandum Opinion in May of 2017, the District Court issued another opinion in light of Mr. Haas' change of counsel and renewed motion for a *Franks* hearing and for suppression of the evidence seized in his personal vehicle, a white Volkswagen Jetta. J.A. 586; *published as, United States* v. *Haas*, 2018 U.S. Dist. LEXIS 143890 (E.D. Va. Aug. 22, 2018) (denying Mr. Haas' motions).

Mr. Haas proceeded to a jury trial. The trial evidence regarding attempted child sex trafficking, came primarily from CW[1]. She testified

---

[1] While CW testified in open court under her own name, for the sake of continuity the initials CW will continue to be used herein.

that she first met Mr. Haas around the end of 2011 or the beginning of 2012 when he answered her online advertisement offering paid sexual services. J.A. 620. They engaged in several additional paid liaisons during 2012, the last one ending with Mr. Haas allegedly informing CW that he was interested in "younger women." J.A. 622. They lost contact until 2016, when Mr. Haas again answered an internet ad placed by CW offering sexual services. J.A. 624.

When they met in 2016 at Mr. Haas' house, CW testified that he again raised the topic of his interest in young women and allegedly displayed images on his laptop computer of child pornography. J.A. 624-28. He also asked her that if she knew of any young girls they could use to produce and sell child pornography. J.A. 629. CW told him "that's fine," but testified that she secretly planned to lead him on and tell the police. J.A. 629. About two weeks after meeting with Mr. Haas, CW contacted FBI Special Agent Shannon Brill regarding the events at Mr. Haas' house. J.A. 633. Before that, Mr. Haas had contacted her "a handful of times" asking for images of children or if she knew of any children to photograph. J.A. 634, 635. She testified that, after meeting with the FBI, she "made up a story about a woman that [she] knew in Baltimore . . .

[who] had children that she could bring down from Baltimore for him to photograph and, you know, engage in sexual things with." J.A. 634.

CW met with Mr. Haas in person just one additional occasion, on July 14, 2016, in a parking lot in Henrico County. J.A. 636. At that time, Mr. Haas was to give CW $100 in exchange for pictures of the purported young girls from Baltimore. J.A. 636-37. The meeting was arranged by text message and, according to CW, they discussed obtaining the pictures in several earlier texts and phone calls. J.A. 647-48, 56. When the July 14 meeting did occur, Hanson was in the process of being pulled over by the police while driving on a suspended license. J.A. 637. Before interacting with the police, she managed to meet briefly with Mr. Haas who was waiting in his car in the parking lot and obtained $100 from him. J.A. 638-39. When asked for identification, CW provided her sister's name. She also was found to be in possession of marijuana. She was released on summonses after forging her sister's name on the documents. J.A. 640-41.

CW spent two weeks in jail after disclosing to the FBI that she had provided a false name to the police and forged summonses for driving on a suspended license and possession of marijuana by signing her sister's

name. J.A. 640-43, 662-63. When she was released on bond, CW met with the FBI, who provided her with a recording device. J.A. 663. She recorded two telephone conversations with Mr. Haas. J.A. 663.

In the first call, which took place on August 14, 2016, there is no specific reference to sexual activities with children from Baltimore. Joint Supplemental Appendix ("J.S.A.") 1-2, 8. In the second call, CW again brings up the idea procuring children from Baltimore and seeks Mr. Haas assurance that he wants to be involved, to which he responds "I'm serious." J.S.A. 5, 9. Mr. Haas then asks if CW can procure pictures of the children and says they can make money from them. *Id*. He encourages her to "hook it up," *Id*, and discuss who might know about it and whether it's the first time the children have done this. J.S.A. 6, 9.

At the close of the case, Mr. Haas moved for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. J.A. 837. The trial court overruled the motion, finding as to Count One that it was a credibility issue for the jury. *Id*.

The jury returned a verdict of guilty on all four charges on September 26, 2018. J.A. 1066. On January 24, 2019, he was subsequently sentenced to life imprisonment for Count I (attempted sex

trafficking of a child); 240 months for Count II (receipt of child pornography); and 120 months for Counts III and IV (possession of child pornography). J.A. 1067. He noted this appeal on January 31, 2019. J.A. 1072.

## SUMMARY OF THE ARGUMENT

The District Court erred by denying Mr. Haas' motions to conduct a *Franks* hearing. Additionally, the District Court erred by incorporating the evidence and testimony from the probable cause hearing and treating it as if it was procured from a *Franks* hearing, thereby denying Mr. Haas the specific opportunity to fully develop relevant evidence, testimony, and argument for his motion to suppress pursuant to *Franks*. The District Court also erred by denying suppression because Agent Gonzalez made material omissions of fact in the warrant affidavits that would undermine the credibility of the sole witness to conduct involving illicit images or the storage of such images on the laptops that were to be seized.

As to the search warrants, the District Court erred by applying the *Leon* good-faith exception to the exclusionary rule, as there was no probable cause to search and seize the laptop from Mr. Haas' work vehicle

and the magistrate was materially misled as to the veracity and credibility of CW due to the omitted material relating to her criminal history, her contemporaneous felony charges related to lying to law enforcement, and her history of serving as a witness for the FBI.

At trial, the District Court erred by allowing the jury to consider whether Mr. Haas had attempted to sexually traffic children as charged in Count One of the Superseding Indictment. According to trial testimony from CW, Mr. Haas discussed his interest in procuring underage children for sexual purposes. On several occasions, he even encouraged her to contact a non-existent Baltimore resident, fabricated by CW, to make such arrangements. Mere talk, however, even if disclosing an intent or desire to commit a crime, is insufficient as a matter of law to constitute an attempt. Without evidence of a "substantial step in furtherance" of the intended crime, there is no attempt. In this case, there was no evidence of a substantial step in furtherance of attempted sex trafficking and the trial court erred in denying Mr. Haas' Motion for Judgment of Acquittal and allowing the jury to consider whether Mr. Haas had attempted to traffic children.

The District Court also made procedural errors in sentencing by miscalculating the Sentencing Guidelines. First, the court enhanced Mr. Haas' offense by four levels pursuant to United States Sentencing Guidelines, (the "Guidelines"), § 2G2.1(b)(1) by concluding that the attempted trafficking involved a minor who had not attained the age of 12. This was error under the definition of the term minor under this Guideline provision where the purported minors were fictitious. The court also incorrectly imposed a five-level enhancement under Guidelines § 4B1.5(b) where the Application Notes to that provision direct that the enhancement does not apply where the "instant offense of conviction" is related to child pornography convictions such as those incurred by Mr. Haas. While Mr. Haas was also convicted of an offense that is a covered sex offense for the imposition of the enhancement, there is no guidance in the Guidelines for how to resolve this conflict. The rule of lenity should therefore resolve this ambiguity in Mr. Haas' favor against imposition of the enhancement.

## STANDARD OF REVIEW

Whether a defendant's showing was sufficient to entitle him to a *Franks* hearing is a question of law for this Court to review *de novo*.

*United States* v. *Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005). When reviewing a district court's ruling on a motion to suppress, this Court reviews factual findings for clear error and legal determinations *de novo*. *United States* v. *Lull*, 824 F.3d 109, 114 (4th Cir. 2016).

This Court reviews *de novo* "the district court's denial of a motion for acquittal based on sufficiency of the evidence." *United States* v. *Wolf*, 860 F.3d 175, 194 (4th Cir. 2017). The jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. *Id.* "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* In evaluating an issue of evidence sufficiency, this Court "views the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government. *United States* v. *McNeal*, 818 F.3d 141, 148 (4th Cir. 2016).

A sentence imposed by a district court is reviewed for reasonableness. *Gall v. United States*, 552 U.S. 38, 46, 51 (2007). The sentence is first examined for "significant procedural error," including improper calculation of the Guidelines range. *Id.* at 51. In assessing Guidelines calculations, the court "review[s] the [sentencing] court's

factual findings for clear error, its legal conclusions de novo, and unpreserved arguments for plain error." *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir.2012) (citations omitted). "[I]mproper calculation of a [G]uideline range constitutes significant procedural error, making the sentence procedurally unreasonable and subject to being vacated." *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012).

## ARGUMENT

### I. The search was unreasonable because the agent applying for the search warrant recklessly omitted information necessary to determine probable cause.

Agent Gonzalez' August 31, 2016 application to conduct a search hinged on the credibility of CW. Knowing that CW's credibility was central to his application, Agent Gonzalez nonetheless failed to include critical and damaging information about CW that he knew before applying for the search warrant. The omission of the known information listed below precluded the magistrate from fairly weighing the informant's credibility and deciding whether there was probable cause to issue a search warrant:

- CW was on probation for a felony conviction during the time of the investigation. J.A. 135–36. Despite knowing that CW was on probation and that she had a criminal history, Gonzalez failed to

run a record check on CW before applying for the search warrant. J.A. 133–35, 137.

- During the course of the investigation, CW was stopped by Henrico County Police for a driving infraction. J.A. 142–43. CW was, at the time of the stop, driving on a suspended license. J.A. 144. To avoid arrest for driving on a suspended license, CW lied to the Henrico County Police regarding her identity, falsely claiming to be her sister. *Id.* CW then forged her sister's name on the uniform summons issued by the police officer, thereby falsely implicating her sister. J.A. 143. Agent Gonzalez also knew prior to applying for the search warrant that as a result of her misrepresentations, CW had been charged in Henrico with felony forgery of the summons and for the misdemeanor of falsely identifying herself to law enforcement. J.A. 145.

- CW presented Agent Gonzalez' with information about her criminal conduct and sought his assistance in resolving the matter with Henrico County law enforcement. J.A. 141–46.

- CW had a recent and long history of being a commercial sex worker and was convicted for prostitution. J.A. 129, 131, 133–36.

- CW previously served as a witness for the FBI in recent investigations and may have testified as a Government witness in federal criminal trials. J.A. 122–25;

- Agent Gonzalez did not determine whether CW's prior history as a witness or informant for the FBI resulted in her testimony being used for warrant applications, the filing of criminal charges, or against a defendant in court. He also did not determine whether her testimony was used to secure arrests or convictions. J.A. 123–25.

- There was no corroboration of the information CW provided as it related to Mr. Haas' possession of illicit material but for facts that are readily available such as Mr. Haas' name, vehicle, address, businesses, associates, etc. J.A. 126–28, 167–72.

Pursuant to *Franks* v. *Delaware*, a defendant may challenge a search warrant by challenging the veracity of the affidavit made to obtain the warrant. 438 U.S. 153, 155–56 (1978). These challenges can also be made when affidavits omit relevant facts that would undermine the credibility of the affiant or the material that the affiant relies on to justify the warrant. *See United States* v. *Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990); *United States* v. *Lull*, 824 F.3d 109 (4th Cir. 2016).

Mr. Haas moved for a *Franks* hearing so he could present evidence that material facts were omitted in the August 31, 2016 affidavit underlying the search warrant. The District Court denied his motion for a *Franks* hearing[2] but allowed a separate probable cause hearing in which it determined that the facts alleged in the affidavit to the search warrant failed to establish probable cause to seize the laptop containing

---

[2] After Agent Gonzalez' testified, the District Court told counsel "[I]f you wish to argue that the *Franks* hearing should be held, I don't know what you would do other than what you've already done. You said you were using this for the good faith exception argued by the government. I'll hear something on how you think you've met the first test for *Franks*, but I don't think you have." J.A. 177. The Court proceeded to issue an opinion as if the probable cause hearing was also a *Franks* hearing. This was in error, as counsel was prohibited from engaging in questioning that would accompany a *Franks* hearing.

child pornography found in Mr. Haas' work truck. J.A. 445, 470–71; *Haas*, 2017 U.S. Dist. LEXIS 67178 at *26–29. Nevertheless, the District Court applied the good-faith exception, finding the search was made pursuant to a facially valid warrant. J.A. 471–72; *Id.* at *29. In light of Agent Gonzalez' testimony at the probable cause hearing, the District Court reviewed its initial decision to deny Mr. Haas' motion for a *Franks* hearing but ultimately denied his motion again after reconsideration. J.A. 461; *id.* at *18. After a change in trial counsel, Mr. Haas' moved for a *Franks* hearing and suppression a third time but this was denied. For the following reasons, the District Court erred when it denied Mr. Haas' motion for a *Franks* hearing and his motion to suppress the seized items.

## A. The district court applied the wrong standard to the first step of the *Franks* analysis and therefore erroneously denied Mr. Haas the opportunity to conduct a *Franks* hearing.

In its Memorandum Opinion, the district court holds that Mr. Haas was not entitled to a *Franks* hearing. J.A. 445 ("the request for a *Franks* hearing will be denied."). The court reaches this conclusion, however, by erroneously applying a preponderance of the evidence standard, rather than the lower threshold standard of whether Mr. Haas had made a "substantial preliminary showing" that would entitle him to a hearing.

J.A. 462. Nowhere does the court even discuss, much less apply, the threshold preliminary standard.

Before a defendant moves to suppress evidence pursuant to *Franks*, he may seek a hearing to present testimony on the matter. *Franks*, 438 U.S. at 155. A "*Franks* hearing" provides the defendant with an opportunity to present evidence in support of his motion to suppress. The threshold standard for whether to allow a *Franks* hearing is different and lower than the subsequent standard applied to suppress evidence following a *Franks* hearing. *See Id.* To hold a *Franks* hearing, a defendant must first make a "substantial preliminary showing" that: 1) the affiant made misleading omissions in the warrant affidavit; and 2) the omissions were either: knowing, intentional, or made with reckless disregard for the truth. *Colkley*, 899 F.2d at 300–01; *Franks*, 438 U.S. at 155.

Once a *Franks* hearing is held, the standard for suppression is inherently higher, as an affiant's reckless disregard for the truth must be established by a "preponderance of the evidence." If this first prong is met, then the material is set aside and the sufficiency of the affidavit's remaining content is judged as to whether it establishes probable cause. *Lull*, 824 F.3d at 114–15 (citing *Franks*, 438 U.S. at 156). If it does not,

"the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

In this case the District Court erroneously applied the more stringent "preponderance of the evidence standard," J.A. 462–66; *Haas*, 2017 U.S. Dist. LEXIS 67178 at *18–22, rather than the "substantial preliminary showing" standard when determining whether Mr. Haas was entitled to a *Franks* hearing. *Compare id. and also* J.A. 590, *Haas*, 2018 U.S. Dist. LEXIS 143890 at *5 ("Both prongs must be proven by a preponderance of the evidence."), *with United States* v. *Tate*, 524 F.3d 449, 455 (4th Cir. 2008) (applying appropriate "substantial preliminary showing" standard for whether to grant a *Franks* hearing).

### 1. Mr. Haas made a showing that clearly described the nature of Agent Gonzalez' omissions.

To make a "substantial preliminary showing" for a *Franks* hearing, a defendant must describe the nature of the affiant's omissions, *Tate*, 524 F.3d at 455, proffer evidence and reasoning why he considers the omissions to be material, *id.*, and provide a reason as to why the affiant's omissions could be deemed as deliberately deceptive or made with reckless disregard. *Id.* The question then "remains whether his showing

was substantively sufficient to entitle him to a *Franks* hearing and this is a question of law to be reviewed *de novo*." *Id.*

Mr. Haas satisfied the first requirement for a *Franks* hearing by clearly describing Agent Gonzalez' omissions undermining the credibility and veracity of CW, the affidavit's sole witness to conduct involving illicit images and the items that were to be seized. The District Court recognized that Mr. Haas made a showing of the omitted information but denied his motion for a *Franks* hearing after finding Agent Gonzalez was neither intentional nor reckless in his omissions. J.A. 465; *Haas*, 2017 U.S. Dist. LEXIS 67178 at *21–22. The District Court then avoided additional inquiry into whether the omissions were material and chose to review the motion according to standards used when considering a *Franks* motion to suppress. Not only was this determination premature in that it denied Mr. Haas the opportunity to conduct a *Franks* hearing, it was erroneous because Mr. Haas made a "substantial preliminary showing" that Agent Gonzalez acted with reckless disregard for the truth.

2.   **The District Court received enough evidence of Agent Gonzalez' reckless disregard for the truth to warrant a *Franks* hearing.**

In its denial of the *Franks* hearing, the District Court stated: "Given the nature of CW's conduct and her forthcoming nature with Agent Gonzalez, the agent was not reckless in omitting these facts. If CW had done something to make the agents question her truthfulness[3] . . . providing more information as to her reliability would have been necessary." *Haas*, 2017 U.S. Dist. LEXIS 67178 at *22. The District Court's findings were erroneous for two reasons.

First, it was error for the District Court to hold that CW did nothing "to make the agents question her truthfulness." *Haas*, 2017 U.S. Dist.

_____

[3] The District Court's analysis also erroneously considered the Agent's subjective credibility assessment as the determinative factor for whether information must be included in the affidavit. "It is the magistrate who must determine independently whether there is probable cause," therefore an affidavit must include "the underlying circumstances" from which the officer concluded the informant "was credible or his information reliable." *See Franks*, 438 U.S. at 165. The neutral detached magistrate is the final arbiter of credibility, not the affiant, and no reasonable officer could consider the omitted information to be objectively immaterial to a credibility determination. Additionally, subjective assessments are only considered in cases involving a "lay affiant" while the "dispositive question becomes *Miller*'s objective test of reckless disregard" when the affiant is a member of law enforcement. *See Daniczek* v. *Spencer*, 156 F.Supp.3d 739, 748 n.4 (E.D. Va. 2016) (citing *Miller* v. *Prince George's Cnty*, 475 F.3d 621 (4th Cir. 2007)).

LEXIS 67178 at *22. CW's past and contemporaneous conduct would objectively make any reasonable member of law enforcement question her truthfulness. The omitted material relating to CW's criminal history, as a matter of law, falls within categories of federally recognized impeachment evidence due to its very nature of undermining a witness's credibility. *See, e.g.*, Fed. R. Evid. 609(a) (allowing admission of all felony convictions as well as all crimes of moral turpitude). Agent Gonzalez knew CW had a criminal record but did not conduct further inquiry into what it entailed. J.A. 133, 138, 175. He knew CW provided false information to law enforcement and feloniously forged a summons regarding her identity, all in the midst of his investigation, and that she sought his remedial assistance when confessing. J.A. 136, 142–146. He knew CW served as a witness for the FBI in the past but did not determine the veracity of her prior claims, whether they led to actionable information, whether they assisted in the securing of warrants, the issuance of criminal charges, or whether she testified in open court and assisted in securing a conviction. J.A. 125. Any reasonable officer would recognize CW had a record of lying to law enforcement, she was willing to lie to avoid criminal punishment, and she sought to curry favor and

assistance from law enforcement. Agent Gonzalez went so far as to personally drive CW to the Henrico County Courthouse and "basically turned her in" for felonious behavior involving lying and forgery. J.A. 147. The District Court was correct when it held that it "would have been necessary" for Agent Gonzalez to provide "more information as to her reliability" if CW did something to cause him to question her truthfulness. Nevertheless, it was incorrect as a matter of law to find that CW did nothing that would cause an officer to question her truthfulness, as any reasonable officer would recognize that she engaged in conduct that materially undermined her credibility.

Second, it was error for the District Court to render Agent Gonzalez' perception of CW's truthfulness as his reason for omitting information in his affidavit. When asked whether he included any of the aforementioned information about CW's credibility, Agent Gonzalez did not cite CW's trustworthiness but admitted, "I didn't know I was obligated to include it in the affidavit." J.A. 143. If there is not a showing of an affiant's intent to mislead, the recklessness standard must at least include an inquiry as to whether a "reasonable officer" would have known his omissions were in violation of clearly established precedent. *Cf. Smith* v. *Reddy*, 882

F.Supp. 497, 501–02 (D. Md. 1995) (applying "reasonable officer" standard for recklessness in an affiant's qualified immunity defense to a § 1983 suit involving a *Franks* claim). Though affiants are not required to include every piece of exculpatory information, *see Evans* v. *Chalmers*, 703 F.3d 636, 651 (4th Cir. 2012), a reasonable officer knows he has a duty to include the sort of information that was omitted in this case. Additionally, a reasonable officer knows he has a duty to investigate a material witness's criminal history in more detail when presented with the amount of information as available to Agent Gonzalez in this case. Mr. Haas does not suggest that Agent Gonzalez' failure to investigate CW's criminal background and her history as an FBI witness is, in itself, sufficient to negate probable cause. However evidence of that omission, *see Clipper* v. *Takoma Park, Md.*, 876 F.2d 17 (4th Cir. 1989), taken together with the evidence that was already known to undermine her credibility, as well as the materiality of CW as a witness and the relative lack of corroboration to Mr. Haas' past conduct or the items to be seized, should present the necessary showing of recklessness for a *Franks* hearing. *Cf id*. at 20 (citing *BeVier* v. *Hucal*, 806 F.2d 123, 127–28 (7th Cir. 1986); *see also Torchinsky* v. *Siwinski*, 942 F.2d 257, 264 (4th Cir.

1991) (officer liable under § 1983 where he fails to investigate readily available exculpatory evidence).

The Fourth Circuit has yet to hold that a particular affiant's conduct constituted "reckless disregard for truth" in a *Franks* challenge and it has not described what sort of showing[4] will suffice in a case involving an affiant's omission. In *Miller* v. *Prince George's Cnty*, this Court found that a police officer should be aware of the clearly established rule against deliberately or recklessly making material omissions to seek a warrant. 475 F.3d 621, 632 (4th Cir. 2007). Not only should this Court hold that an affiant's ignorance of clearly established law constitutes a preliminary showing of "reckless disregard for the truth," but the materiality of the information should be considered in such a case.

---

[4] At most, the Fourth Circuit has stated that "reckless disregard *can be established* by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported . . . . the false statements or omissions must be material. *Miller*, 475 F.3d at 627, 629 (emphasis added). The *Miller* Court listed what is sufficient, rather than necessary, for a showing of "reckless disregard" in cases where an affiant includes misleading information. The Fourth Circuit has not explicitly described what is necessary or sufficient for a showing of reckless disregard in a case involving omissions in an affidavit.

In *United States* v. *Colkley*, the Fourth Circuit expressed "disdain for the notion that bad motive can be inferred from the materiality of omitted information" but it is "less clear how the Fourth Circuit would evaluate the omission under the reckless disregard prong of *Franks*." *See Horton* v. *City of Columbia*, 408 S.C. 27, 37 (Ct. App. 2014) (discussing *Colkley* and the lack of Fourth Circuit precedent regarding what constitutes a showing of "reckless disregard" for *Franks* challenge); *see also United States* v. *Shorter*, 328 F.3d 167, 171 n.2 (4th Cir. 2003) ("In *Colkley*, we left open the question of whether intent could be inferred from the omission of material that was 'clearly critical' to the probable cause determination."). "If reckless disregard can only be established by affirmative proof, without reference to the nature of the omitted material, it is difficult to imagine how any party would ever be entitled to a *Franks* hearing on omitted information." *Id.*

The District Court avoided a materiality determination, J.A. 466, *Haas*, 2017 U.S. Dist. LEXIS 67178 at *22, but the materiality of the omitted information should have been sufficient for a showing of recklessness in support of a *Franks* hearing. *See, e.g.*, *United States* v. *Glover*, 755 F.3d 811, 820 (7th Cir. 2014) ("An officer's omission from the

probable cause affidavit of *known* and *substantial adverse information about the informant's credibility* is sufficient to support a reasonable inference of recklessness." (emphasis added)). The omitted information in this case was material because the affidavit rested on CW's credibility, as she was the sole witness to the claims involving Mr. Haas' possession of illicit images and the only witness to those images being stored on the items that were to be seized per the warrant. Therefore, the omitted information objectively related her credibility. *See United States* v. *Wharton*, 840 F.3d 163, 169 (4th Cir. 2016) (holding witness's "credibility was particularly material for the affidavit" if relied on heavily).

## B. The District Court erroneously denied Haas' *Franks* motion to suppress the evidence.

In *United States* v. *Lull*, the Fourth Circuit considered whether an investigator's omissions in an affidavit were misleading and thereby satisfied the intentionality prong under *Franks*. 824 F.3d at 115. This Court noted, "the defendant's burden in showing intent is greater in the case of an omission because '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *Id*. The District Court found Agent Gonzalez was neither intentional nor reckless in his omissions. J.A. 465–66, *Haas*, 2017 U.S.

Dist. LEXIS 67178 at *21–22, and it failed to consider the materiality of these omissions. Not only should the District Court's decision to deny a *Franks* hearing be reversed, should this Court consider the hearing that was held to have been a *de facto Franks* hearing, then the decision not to suppress the evidence pursuant to *Franks* should reversed be as well.

1. **The District Court received enough evidence of Agent Gonzalez' reckless disregard for the truth to warrant suppression pursuant to *Franks*.**

The District Court held that Agent Gonzalez was not reckless in his omissions though he admitted the reason he did not include the information was because he did not know he was obligated to include it. J.A. 143-44. A "reasonable officer" would have known these omissions were made in violation of established precedent. *Cf. Smith*, 882 F. Supp. at 502. The affidavit relied on CW's credibility as the sole witness for otherwise-uncorroborated claims involving Mr. Haas being in possession of illicit images on his laptops. *See Wharton*, 840 F.3d at 169 (holding that a witness's "credibility was particularly material for the affidavit" if relied on heavily). An affiant's ignorance of established legal precedent should constitute "reckless disregard for the truth" and the materiality of the information should be considered when presented with a *Franks*

challenge for suppression. *Cf. Shorter*, 328 F.3d at 171 n.2 (4th Cir. 2003). The materiality of the omitted information should be considered at this stage of review, as it provided enough of a showing to satisfy the recklessness element for suppression.

An omission is material if it is necessary to the neutral and disinterested court's finding of probable cause. *Wharton*, 840 F.3d at 168. Even if information is relevant, it is not material unless its inclusion in the affidavit would defeat probable cause. *Id.* The Fourth Circuit takes note as to how much of the factual basis for the affidavit is supplied by the witness or informant when assessing the materiality of an omission relating to the witness's or informant's credibility. *Id.* at 169; *Lull* 824 F.3d at 118. If the witness or informant is relied on heavily, "his credibility was particularly material for the affidavit." *Wharton*, 840 F.3d at 169. CW was the sole witness to any information in reference to child pornography or storage of such images on electronic devices in Mr. Haas' residence. Therefore, CW's credibility must be considered "particularly material." *Id.*; *Lull*, 824 F.3d at 118.

## 2. The affidavit had very little corroborative evidence of CW's allegations.

In *Lull*, this Court found that when no one else in the affidavit other than a cooperating witness identifies the defendant, or otherwise connects him to the criminal conduct at issue, the excise of the cooperating witness's testimony must be deemed material. *See Wharton*, 840 F.3d at 169; *Lull*, 824 F.3d at 119. When assessing the materiality of omitted information that undermines the credibility of a material witness, the Fourth Circuit excises the witness's (otherwise-undisputed) statements from the affidavit. *Lull*, 824 F.3d at 118. If the corrected warrant affidavit establishes probable cause, there is no *Franks* violation. *Wharton*, 840 F.3d at 169. But, if the corrected affidavit lacks other information that specifically identifies the defendant as being involved in the alleged criminal conduct, the omission is material and probable cause is lacking. *Id.* (discussing *Lull*, 824 F.3d at 120).

Accordingly, the *Lull* Court held that an affiant's omission was material when it involved an informant's lie regarding his theft of $20 during a controlled-buy. 824 F.3d at 119. The District Court in this case attempted to distinguish *Lull* by citing the fact that the informant's lie in that case was partially related to the controlled-buy that gave the

affiant probable cause, whereas CW's lies were considered [5] to be unrelated to her allegations about Mr. Haas. *Haas*, J.A. 465–66, 2017 U.S. Dist. LEXIS 67178 at *21–22. Such a distinction is irrelevant to *Lull*'s outcome or application, as the informant's lie in *Lull* had no direct bearing on the veracity of the incriminating information in the affidavit as it related to the defendant's drug distribution, yet this Court deemed the omission to be material and suppression was warranted.

An important factor in determining whether a witness's report establishes probable cause is the degree to which it is corroborated. *Illinois* v. *Gates*, 462 U.S. 213, 241 (1983). In this case, the only corroboration prior to Agent Gonzalez' application for the warrant involved verification of Haas' "addresses, businesses, and associates" and

---

[5] The District Court believed that CW's confession to Agent Gonzalez was the initial and only way for the Agent to know about her lies to the Henrico County police or her commission of forgery and uttering. In reality, Agent Gonzalez possessed records of text message correspondence between CW and Mr. Haas in which CW explicitly referred to her being with the police during the Henrico County incident. J.A. 376-399. The affiant was therefore aware, or should have been aware, of CW's contact with the Henrico Police without CW telling him about the incident. This puts the instant case in line with the facts of *Lull*, *supra*, in that the contact was contemporaneous with the informant's work for the Government and was known to the agents at the time.

two recorded phone calls[6] on August 12–13, 2016 where Haas and CW discussed a "plan to meet and produce child pornography." J.A. 126-28, 167-72. Therefore, if this Court finds CW to be unreliable and excises her contribution to the affidavit, the omissions must be deemed material and the warrant invalid for lack of probable cause due to the absence of additional corroboration about Mr. Haas' past conduct involving possession of illicit imagery or his method of storing such imagery.

In *Lull* and *Tate*, the Fourth Circuit's correction of the affidavits to remove the questionable material undermined the foundational core of the applications. Removal of CW's testimony does the same here, as the corrected affidavit does not include any information establishing probable cause for the charges involving the possession of illicit images or the evidence that was seized, therefore none of the items should have been retrieved. *See United States* v. *Doyle*, 650 F.3d 460, 472 (4th Cir.) ("[E]vidence of child molestation alone does not support probable cause to search for child pornography"); *People of the Virgin Islands* v. *John*, 654 F.3d 412, 419 (3d Cir. 2011) ("Although offenses relating to child

---

[6] Notably, these two recorded phone calls made no mention of Mr. Haas already being in the possession of illicit images or his laptops.

pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation that a person who has committed one crime has likely committed the other . . . ."); *United States* v. *Falso*, 544 F.3d 110, 122 (2d Cir. 2008)); *United States* v. *Hodson*, 543 F.3d 286, 293 (6th Cir. 2008).

Additionally, like the affidavits in *Lull* and *Tate*, the material underlying Agent Gonzalez' omissions casts inherent doubt on the validity of CW as the material witness. *Wharton*, 840 F.3d at 170. The District Court held that, because "CW never provided information to the agents that they subsequently determined was false," "it was possible for the magistrate to make a determination of the reliability of CW" under the totality of the circumstances. *Haas*, 2017 U.S. Dist. LEXIS 67178 at *22. This finding was erroneous in that the magistrate never had the information that was necessary to make this finding and neither a credibility determination nor probable cause can be established by considering the evidence that was subsequently retrieved.

## II.    The District Court erroneously applied the good faith exception.

The District Court held that the affidavit "was not sufficient to support a finding of probable cause to issue a search warrant for Haas' work

vehicle." J.A. 472-73, *Haas*, 2017 U.S. Dist. LEXIS 67178 at *29. "Nonetheless, under the good faith exception, evidence obtained from an invalidated search warrant is not to be suppressed where officer conduct was reasonable and where the magistrate relied on an affidavit that contained more than bare bones allegations." *Id*.

The Supreme Court established the good-faith exception to the exclusionary rule in *United States* v. *Leon*, 468 U.S. 897 (1984). The *Leon* Court found that the exclusionary rule should not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id*. at 920. In short, the exclusionary rule will not apply "where the officer's conduct is objectively reasonable." *Id*. at 919. In the ordinary case, an officer cannot be expected to question an issuing judge's probable cause determination or his judgment that the form of the warrant is technically sufficient, but the *Leon* Court noted that it was not suggesting that exclusion is "always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Id*. at 922. Specifically, the Supreme Court has held that there are at least five circumstances when the good-faith exception would not apply. *Id*.

The good faith exception to the exclusionary rule allows courts to introduce evidence obtained in violation of the Constitution but in reasonable reliance on a defective warrant. *See Leon*, 468 U.S. at 905. The Supreme Court has identified only five limitations to the application of the good faith exception: (1) where a magistrate issues a warrant based on a deliberately or recklessly false affidavit, *see Franks*, 438 U.S. at 155–56; (2) where a magistrate lacks neutrality and detachment, *Lo-Ji Sales, Inc.* v. *New York*, 442 U.S. 319, 326–28 (1979); (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923 (quoting *Brown* v. *Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)); (4) where a warrant is so facially deficient that a reasonable officer could not believe it was valid, *see id.* at 923; and (5) where police recklessly maintain or knowingly enter false information into a warrant database to enable a future arrest, *Herring* v. *United States*, 555 U.S. 135, 145 (2009). In this case, the *Franks* exception applies for the reasons already stated above, and therefore the good-faith exception should not apply.

### III. The trial court erred by allowing the charge of attempted sex trafficking to be presented to the jury where the evidence was insufficient as a matter of law to show that the Appellant made the requisite substantial step in furtherance of the attempted crime.

Mr. Haas was found guilty and sentenced to life imprisonment on Count 1 for attempted sex trafficking of children in violation of 18 U.S.C. § 1591. An "attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." *United States* v. *Pratt*, 351 F.3d 131, 135 (4th Cir. 2003). Mr. Haas moved for an acquittal on Count 1 based on the sufficiency of the evidence. J.A. at 837-38. This Court reviews *de novo* "the district court's denial of a motion for acquittal based on sufficiency of the evidence." *United States* v. *Wolf*, 860 F.3d 175, 194 (4th Cir. 2017). The jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. *Id*. "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id*. In evaluating an issue of evidence sufficiency, this Court "views the

evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government. *United States* v. *McNeal*, 818 F.3d 141, 148 (4th Cir. 2016).

While the statute does not define the elements of an attempt, the crime is nonetheless well understood in the law, and its elements are not generally disputed. *Pratt*, 351 F.3d at 135. To establish that a defendant committed the crime of attempt, the government must prove that (1) the defendant had the requisite intent to commit a crime; (2) the defendant undertook a direct act in a course of conduct planned to culminate in his commission of the crime; (3) the act was substantial, in that it was strongly corroborative of the defendant's criminal purpose; and (4) the act fell short of the commission of the intended crime due to intervening circumstances. *Id*. The Model Penal Code, "from which this court's formulation was originally drawn," *id*., provides the following list of acts strongly corroborating a defendant's criminal purpose:

> (a) lying in wait, searching for or following the contemplated victim of the crime;
>
> (b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;
>
> (c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of a crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

*Id.* at 135–36 (citing Model Penal Code § 5.01(2)).

Of these corroborating acts, the Government only established that Mr. Haas responded to a cooperating witness's entreaties[7] to engage in conduct constituting an element of the crime. Mere preparation for the commission of a crime "does not constitute an attempt to commit a crime," but if preparation comes "so near to the accomplishment of the crime that it becomes *probable* that the crime will be committed absent an outside intervening circumstance, the preparation may become an attempt." *Id.*

---

[7] Due to the context of CW's illicit relationship with Mr. Haas, as well her suggestion that she could provide child pornography and children from Baltimore, the term "innocent agent" should not apply here. In this case, CW made it clear that to Mr. Haas that she was amenable to engaging in this behavior.

at 136 (emphasis in original). The Government did not provide any evidence of an action, which if uninterrupted, would have resulted in the commission of that offense.

The line between preparation and a substantial act done toward the commission of a crime is inherently fact-intensive. *Id*. To determine whether conduct is preparation or an attempt, a court must assess how probable it would have been that the crime would have been committed— at least as perceived by the defendant—had intervening circumstances not occurred. Applying this standard, it is clear that the direct, substantial act toward the commission of a crime need not be the last possible act before its commission, as an attempt can comprise any substantial act in a progression of conduct that is meant to culminate in the commission of the crime intended. *Id*.

While "words and discussions would usually be considered preparations for most crimes, a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed." *Pratt*, 351 F.3d at 136. In this case, no evidence of such a "specific" discussion was presented. For the conversations between Mr. Haas and CW to rise to the level of an "attempt," they would have

included some material detail or information such as a date or time for the children to have been taken from Baltimore, a date or time for Mr. Haas to come in contact with them, an actual meeting location, some methods or details of financial transfer, etc. At most, the discussions between Mr. Haas and CW could be considered preparatory in that the only substantive details came from CW rather than Mr. Haas when she mentioned where she expected these fictitious children would come from and then provided coded language about their ages. The text messages and phone calls testified to by CW at trial appear show CW offering to sell Mr. Haas with pictures of the fictional Baltimore girls rather than making any arrangements whatsoever to actually procure them. J.A. 636-37, 656.

Additionally, there was no history of Mr. Haas and CW actually engaging in any form of child trafficking or having ever been in the presence of children together. It would be unreasonable to infer any additional details that would otherwise add corroborating context to their communications. Because the Government did not provide evidence of any other acts that would corroborate Mr. Haas' criminal purpose but for preparatory communications, the evidence was not sufficient for a

finding of guilt on Count 1 as a matter of law and his motion for acquittal should have been granted.

## IV. The District Court committed procedural error in arriving at Mr. Haas' sentence.

At sentencing, the probation officer in her Presentence Report concluded that Mr. Haas had a total offense history of 43, J.A. 1082, and zero criminal history points, resulting in a criminal history category of I. J.A. 1085. The district court, following a hearing that included challenges to the Guidelines calculation and motions for departures and variances, concluded that the probation officer had correctly calculated the Guidelines, and that the appropriate Guidelines sentencing range was therefore life in prison. J.A. 1025, 1092. This conclusion was in error, as the Guidelines were incorrectly calculated in at least two respects.

### A. The District Court erroneously applied a four-level enhancement under USSG § 2G2.1(b)(1)(A) where the subject children were fictional.

A defendant convicted of attempted sex trafficking of children is subject to a 4-level enhancement under § 2G2.1(b)(1)(A) of the sentencing guidelines if the offense involved a minor who had not attained the age of 12. He is subject to a 2-level enhancement under § 2G2.1(b)(1)(B) if the

offense involved a minor who had attained the age of 12 but not attained the age of 16.

Mr. Haas allegedly spoke with CW about her procuring two children for the purpose of sex trafficking. The children that were the subject of the purported conversation, however, were not real. CW suggested that these non-existent children were eight and twelve years old. Therefore, the District Court applied the aforementioned enhancements after concluding that the fictitious nature of the minors did not matter, so long as the defendant thought he was trafficking in minors under the age of eighteen. JA. 1008. The application notes define "minor" as:

(A) an individual who had not attained the age of 18 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years. USSG § 2G2.1, App. n. 1.

The Government initially argued that because CW eventually served as a confidential witness for the FBI, the definition in Subsection (B) applied pursuant to the rules of agency. J.A. 900, 992. The District Court correctly disagreed with the Government's position, stating:

I can't find it reasonable to interpret 'who a law enforcement officer represented to a participant' with the precision that all of these notes and commentary expressed means expressed by an agent. So I reject your argument, because the undisputed evidence is that no law enforcement officer . . . represented to Mr. Haas what is required in (B). J.A. 1000.

Nevertheless, the District Court proceeded to state:

> I believe that the plain interpretation of minor, meaning one of three things, includes any one of the three things. (A) is an individual who had not attained the age of 18 years, but the government says that that isn't the part that applies, only sub (B) applies. So what do I do? Mr. Hood [the prosecutor]?
>
> MR. HOOD: If the Court will recall, the government argued that part (A) did apply because this was an attempt offense . . . .
>
> THE COURT: Why does the fact that it's an attempt make a difference to the interpretation of (A), to the application of (A)?
>
> MR. HOOD: Because he wasn't attempting to obtain a fictitious child, obviously. He was attempting to obtain a real child.
>
> THE COURT: I think that's a reasonable definition, and I apply it here and overrule the objection to [paragraph] number 37 [of the PSR] on that ground . . . .

*Id.* at p. 1007.

This Court must reach a different conclusion, as the definition of "minor" in the application note to § 2G2.1 makes it clear that it only applies to real, live, identifiable humans and it is "more than just the thought that counts." *See United States* v. *Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011) (finding the same definition of "minor" in U.S.S.G. § 2G2.2 does not apply to a fictional child unless related to subsection (B) of the application note); *United States* v. *Vasquez*, 839 F.3d 409, 412–13 (5th Cir. 2016) (same for U.S.S.G. § 2G1.3(b)(5)). In *United States* v. *Fulford*, the Eleventh Circuit held:

> [T]he only part of the definition of "minor" in the commentary to U.S.S.G. § 2G2.2 that does not include the involvement of a law enforcement officer is 'an individual who had not attained the age of 18 years . . . . In other words, where the defendant is not dealing with a law enforcement officer, *the enhancement applies only where the 'minor' actually is a true, real live, sure enough minor.*

662 F.3d 1174, 1181 (11th Cir. 2011) (emphasis added).

In *United States* v. *Vasquez*, the Fifth Circuit adopted *Fulton*'s reasoning for the same definition of "minor" in the commentary of § 2G1.3(b)(5). 839 F.3d at 412–13 ("[T]he applicable definition of 'minor' . . . does not apply where the defendant solicits another person to engage

in unlawful sexual activity with a fictitious minor, invented by the defendant, under twelve years of age. For the enhancement to apply under these circumstances, the minor must be a real person.").

In this case, the Government argued that subsection (A) could apply, even though there was no actual, living, identifiable minor involved. J.A. 999. ("Yes, Your Honor, and it was a fictitious person. I don't want to make that the central focus of the dispute."). The Government's argument is that Subsection (A) applies because Mr. Haas was convicted of attempted sexual trafficking rather than a completed offense and the District Court adopted this reasoning. J.A. 1005. Such an exception for an "attempt" would render the latter definitions superfluous, as every crime involving a fictitious minor is inherently an attempt. *See United States* v. *Childress*, 104 F.3d 47, 52 (4th Cir. 1996) ("A well-recognized canon of construction requires courts to read statutory provisions so that, when possible, no part of the statute is superfluous."). It would also render the phrase "fictitious or not" to be superfluous in subsection (B) while violating the maxim of *expressio unius est exclusio alterius. See, e.g., Tenn. Valley Auth.* v. *Hill*, 437 U.S. 153, 188 (1978) (the express inclusion of one thing implies the purposeful

exclusion of another). Additionally, there is no distinction between an attempt and a completed offense as it relates to the application notes. Therefore, this Court should find that the District Court mistakenly applied the sentencing enhancements pursuant to §§ 2G2.1(b)(1)(A), (B) of the sentencing guidelines and erroneously increased Mr. Haas' Guideline calculations by four levels.

## B. The District Court erroneously applied a five-level sentencing enhancement under USSG § 4B1.5(b) by concluding that the instant offense of conviction was a covered sex crime.

The Presentence Report concluded that Mr. Haas' "instant offense of conviction" was a "covered sex crime" under USSG § 4B1.5(b) and enhanced his offense level, after grouping counts, by 5 points, resulting in a total offense level of 45. J.A. 1082, (PSR ¶54). Over Mr. Haas' objection, J.A. 839, the District Court accepted this calculation and adopted the PSR conclusion that the Guidelines called for a life sentence. J.A. 1025, 1092 (PSR ¶¶ 106-07). This was an erroneous calculation of the Guidelines.

Mr. Haas was convicted of attempted sex trafficking of a minor (Count 1) pursuant to 18 U.S.C. §1594. This is a "covered sex crime" pursuant to 4B1.5(b). He was also convicted in count 2 of receipt of child

pornography pursuant to 18 U.S.C. §§ 2252A(a)(2)(A) and (b), and in Counts 3 and 4, of possession of child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B). These are not "covered sex crimes," as they are specifically excluded under Application Note 2 to 4B1.5. The enhancement only applies, however, if the "instant offense of conviction" is a covered sex crime. The Guidelines provide no guidance regarding what "instant" means and, as significantly, provide no guidance as to what to do when there are multiple offenses of conviction, some covered and others not. The Guidelines Commission could easily have stated that the enhancement should apply if *at least one* of the instant offenses of conviction were a covered sex crime. They did not, and that leaves significant ambiguity.[8]

"The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what

---

[8] The District Court relied on the case of *United States v. Dowell,* 771 F.3d 162 (4th Cir. 2014) to conclude that the enhancement applied. J.A. 1024. The Dowell case, however, is inapposite as it challenged the application of the 4B1.5(b) provision on the grounds of double counting rather than whether it should be applied when separate offenses of conviction are both included and excluded from the definition of a covered sex crime. *Dowell*, 771 F.3d at 170–71.

Congress intended." *Reno v. Koray*, 515 U.S. 50, 65 (1995) (internal citations and quotation marks omitted) (*quoting Smith v. United States*, 508 U.S. 223, 239 (1993); *Ladner v. United States*, 358 U.S. 169, 178 (1958)). In cases in which the rule applies, it "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). The rule may be applied in the context of the Sentencing Guidelines. *United States* v. *Cutler*, 36 F.3d 406, 408 (4th Cir. 1994) (noting, however, that it should be applied where there is a "grievous ambiguity or uncertainty in the language and structure" of a statute, *citing Chapman v. United States*, 500 U.S. 453, 463 (1991)). In this case, there is no way to resolve the ambiguity without adding words or meaning that have been left out of the Guidelines provision. For that reason, the rule of lenity should be applied and the five-level enhancement should not have been applied by the district court.

## **CONCLUSION**

WHEREFORE, Mr. Haas respectfully requests for this honorable to REVERSE the District Court's rulings, DISMISS his conviction on Count One of the Superseding Indictment, VACATE his sentence, GRANT

further relief this Court deems appropriate, and REMAND the case for further proceedings in accordance with this Court's opinion finding the District Court erred in: its denial of his motion for a *Franks* hearing, its denial of suppression pursuant to *Franks*, and in its application of the good-faith exception to the exclusionary rule, its ruling denying Mr. Haas' motion to dismiss pursuant to FRCP 29 for a Judgment of Acquittal, and its procedural error in miscalculating the Guidelines.

Respectfully submitted,

_____/s/_____
**WILLIAM J. DINKIN**
Counsel for Robert Todd Haas
Stone, Dinkin & Amirshahi PLC
101 Shockoe Slip, Suite K
Richmond, VA 23219
P: (804) 359-0000

Dated: June 3, 2019

## REQUEST FOR ORAL ARGUMENT

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

No. _19-4077_     **Caption:** US v. Richard Haas

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____11,703_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
MS Word _____ [*identify word processing program*] in
Century Schoolbook, 14 point _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) _William Dinkin_____

Party Name _appellant_____

Dated: _7/15/2019_____

# CERTIFICATE OF SERVICE

I certify that on 7/15/2019 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ William Dinkin
_____
Signature

7/15/2019
_____
Date